## Thomas Davidson v. Michigan Central R. R. Co.

*Railways—Fencing tracks—Damages for injury to animals.*

The Railroad Law (Act 198 of 1873, art. 4, § 15) in requiring companies to fence their tracks only required reasonable partition fences four and a half feet high, and fairly adapted, so far as their strength and mode of construction were concerned, to keep animals from getting on the track. But Act 175 of 1881 leaves them to be approved and regulated by the Commissioner of Railroads.

In an action against a railway company for injury to a horse which had got upon the track, it was error, while admitting evidence of his reduced value, to allow testimony of what his use would have been worth during a certain period after the injury, if he were sound, especially if the declaration made no claim for the value of his services, and the plaintiff sought to show that he was absolutely worthless.

The measure of damages for injury to a domestic animal or other perishable chattel is usually its reduced value at the time; it can hardly be fixed by the rules applicable in the case of injury to a human being.

Error to Ingham. Submitted Oct. 12. Decided Oct. 31.

CASE. Defendant brings error. Reversed.

*M. V. & R. A. Montgomery* for appellant.

*S. L. Kilbourne* for appellee. Damages for loss of service and expense of cure, are recoverable under proper allegations, where suit is brought for injury to animals: 1 Chit. Pl. 395; Addison on Torts § 1339; *G. R. & I. R. R. v. Southwick* 30 Mich. 444; *Peckham v. Holman* 11 Pick. 484; *Hutchinson v. Granger* 13 Vt. 386, 394; *Heiser v. Loomis* 47 Mich. 16; and these items together with the diminution of value constitutes the true measure of damage: *Jaquith v. Hudson* 5 Mich. 123; *Allison v. Chandler* 11 Mich. 542; *Warren v. Cole* 15 Mich. 265; *Thompson v. Ellsworth* 39 Mich. 719; *Tracy v. Butters* 40 Mich. 406; Addison on Torts § 590; *Hughes v. Quentin* 8 C. & P. 703.

CAMPBELL, J.   Defendant was sued for injury done to two horses belonging to plaintiff, that got upon the track of the railroad by reason of an alleged defect in the fence bars on the line of plaintiff's farm.   The only question concerning the quality of the fence related to the construction and sufficiency of the bars and their fixtures, which had been substituted for gates that were not strong enough.   The fence is not complained of except at the bars.   The horses escaped in the night, and in the morning two sets of bars had dropped down, and the cleat confining the bars on one post was torn off at the top, and on the other set at the bottom, so as to let the bars drop.

There was a running discussion between the court and counsel for defendant as to the legal requisites for a sufficient fence, a considerable part of which does not seem to us to have much bearing on the real question at issue, or to be very important.   The court substantially told the jury that a fence was sufficient if it was strong enough to reasonably serve the purpose of turning back such beasts as fences were generally designed to restrain, and unless strong enough for this it was insufficient.   They were also instructed that fences were not required to guard against very unruly or breachy cattle, but only such as are usually restrained by good fences.

We think the jury could not have been misled into supposing the company was bound to build fences more strongly than would be reasonable partition fences.   The statute puts the company on the footing of any one else bound to build partition fences, merely laying the whole instead of half the burden of such fencing on the corporation.   § 15, art. 4, Railroad Act.   Neither is the company compelled under any circumstances to build a fence over four and a half feet high, and it cannot therefore be responsible for an animal jumping over an adequately strong fence of that height.   It appears from a colloquy with a juror that rail fences four and a half feet high are not regarded by farmers as calculated to turn horses, and there is some reason to think that the jury became confused concerning the difference between

a fence of adequate strength and one of adequate height. The way in which the discussion proceeded in breaking the continuity of the charge of itself created more or less confusion.

It is very clear that the statute was not intended to require anything more or less than what would be a reasonably good fence, without regard to the farmer-like or slovenly fencing common in the neighborhood, and that its strength should be adapted in a fair way to its statutory purpose of keeping animals from getting on the track by reason of its weakness or improper construction.

In the present case the real question, to which all the discussion might properly have been confined, related to the quality of the arrangement of bars. Counsel claimed that the question as to these was purely one of strength of materials. This strikes us as a narrow view of the subject. That part of the fence can hardly be called strong unless it will keep animals back under such circumstances as are likely to arise. A bar may be strong enough not to break, but if it is liable to be easily displaced, so as to allow animals to get through readily, and so that they are by their ordinary habits likely to get through, such a portion of the inclosure cannot properly be deemed adequate. If animals are likely under ordinary circumstances to move or throw down the bars, some greater security is evidently requisite. But, on the other hand, such bars are adequate if at once sufficiently strong and properly arranged as not to permit such passage without something more than the usual efforts or movements of animals at such places. A proper arrangement may be as important as strong materials.

The law as it now stands has removed the difficulty which must arise from the differing views of jurors by placing the approval and regulation of these fences in the control of the Commissioner of Railroads. Laws 1881, No. 175. The circuit judge in the present case endeavored to impress upon the jury what was the true rule to guide them, and if there was any failure to do this it seems to have been from not apprehending the difficulty among the jury arising out

of the inadequacy of common four and a half feet high rail fences to confine horses.

There was, we think, an error in permitting certain elements of damage to be considered. One of the horses being killed, no question arose except as to his value. But the other was not killed, and the court allowed testimony not only of the reduced value of the animal, but also of what his use would have been worth if sound, during the three months succeeding the injury. This was done when the plaintiff had undertaken to prove him absolutely worthless ever since the injury. This is clearly wrong. There is no claim in the declaration for the value of services. The claim there set out beyond the injury is for expenses of cure, which there was no attempt to prove, and which could not usually be a very reasonable claim. But in the case of domestic animals injured, the proper rule of damages, as in the case of other perishable chattels, should usually be the reduced value at the time. There may be peculiar and exceptional circumstances which would possibly sometimes justify a different rule, but they must be very peculiar. But there is generally no difficulty in replacing beasts by others adapted to similar service, and the difference between the value before and after the accident will enable the owner to be fully indemnified. Injuries to human beings and the rules applied in redressing them can furnish no uniform guide in dealing with animals or other chattels.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.