CHICAGO, B. & Q. R. CO. v. GELVIN.

(Circuit Court of Appeals, Eighth Circuit. November 10, 1916. Rehearing Denied January 13, 1917.)

No. 4580.

1. DAMAGES ☞113—PERSONAL PROPERTY—MEASURE OF DAMAGES.

Where plaintiff's cattle were injured through the alleged negligence of defendant, the measure of damages is the difference between the value of the cattle at the place of the injury immediately before and after it.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 90, 91, 279, 280; Dec. Dig. ☞113.]

2. DAMAGES ☞174(2)—EVIDENCE—SPECULATIVE DAMAGES.

Sparks escaping from defendant's locomotive ignited brush and weeds on its right of way, which fire was communicated to plaintiff's pasture and meadow land, where it destroyed about 150 acres of grass and frightened defendant's 391 head of high grade fat cattle, which he was feeding for the market. The cattle stampeded by reason of the smoke and roar of the fire, and one of them was killed, and all received bruises, becoming overheated. Thereafter the teeth of the cattle became sore from eating short grass and weeds raised on the burnt land, and they would not eat. There was evidence that, by reason of the soreness of their teeth and their fright, the cattle did not put on weight at the customary rate, and that when they were marketed in Chicago, a city in another state, they were not heavy enough to bring the top price; heavy cattle being in demand. *Held* that, as the measure of damages for injuries from the fire was the difference in the value of the cattle immediately before and after the fire at the place of injury, evidence that the cattle did not put on weight as fast as was customary for cattle being so fed, and that they did not bring the top price because they were not heavy, was inadmissible, as relating to speculative matters.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 463, 467; Dec. Dig. ☞174(2).]

3. APPEAL AND ERROR ☞1053(3)—REVIEW—HARMLESS ERROR.

In such case, error in admitting evidence as to the failure of the cattle to put on weight, and the market price, was not cured by an instruction that nothing could be allowed on account of injuries resulting from illness and sore teeth, caused when the cattle ate short grass and weeds on the burnt parcel.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4180–4182; Dec. Dig. ☞1053(3).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. DAMAGES ⊚163(4)—EVIDENCE—SUFFICIENCY.

Where the evidence showed that some of the injuries to plaintiff's cattle were not caused by defendant's alleged negligence, and there was nothing to show what proportion of the injuries resulted from such negligence, the jury cannot arbitrarily apportion a part, or all, of the proven damages to the cause for which defendant was liable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 459; Dec. Dig. ⊚163(4).]

5. NEGLIGENCE ⊚58—PROXIMATE CAUSE—LIABILITY.

If the wrong and resulting damage are not known by common experience to be natural and usual in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the damage is not sufficiently shown to be the result of the wrong to support an action.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 71; Dec. Dig. ⊚58.]

6. NEGLIGENCE ⊚56(1)—ACTIONS—PROXIMATE CAUSE.

That the injury might possibly result from a wrong does not show that it was the proximate result of such wrong, and the wrongdoer is not liable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 69; Dec. Dig. ⊚56(1).]

7. RAILROADS ⊚464—FIRES—PROXIMATE CAUSE.

Where fire escaped from defendant's locomotive, ignited weeds and brush on its right of way, and was communicated to plaintiff's pasture, wherein he was feeding cattle, and the cattle, by reason of the smoke and roar, stampeded and were injured, the wrong must, as a matter of law, be held not the proximate cause of the injury to the cattle; such injury not being one in the common experience of mankind known to be likely to result from the fire.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1687–1689; Dec. Dig. ⊚464.]

8. NEGLIGENCE ⊚59—PROXIMATE CAUSE—WHAT CONSTITUTES.

A wrongdoer is not liable for an injury which could not be reasonably foreseen or anticipated as the probable result of the wrong.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. ⊚59.]

9. NEGLIGENCE ⊚136(25)—JURY QUESTION—PROXIMATE CAUSE.

Where the facts concerning defendant's negligence and the resulting injuries were undisputed, the court may, the resulting injuries not being such as might have been anticipated, declare as a matter of law that the negligence was not the proximate cause.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 326–332; Dec. Dig. ⊚136(25).]

10. RAILROADS ⊚464—FIRES—INJURIES—FRIGHT.

Bodily ailments to human beings, due to fright caused by negligence, are not actionable; and the same rule applies to dumb brutes. Therefore, where through defendant's negligence fire escaped from one of its locomotives, ignited brush and weeds on its right of way, and spread to plaintiff's pasture, where it gained great headway, frightening plaintiff's cattle grazing in the pasture, but not reaching them, damages for injuries received by the cattle in their stampede as a result of the fright cannot be recovered.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1687–1689; Dec. Dig. ⊚464.]

⊚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. APPEAL AND ERROR ☞1033(9)—HARMLESS ERROR—MEASURE OF DAMAGES.
    Where defendant negligently allowed fire to escape from its locomotive
    and destroyed plaintiff's blue grass pasture, plaintiff is entitled to re-
    cover the fair rental value for the season or part of the season in which
    the destruction occurred, together with such time as is essential to re-
    store the pasture by the process of reseeding; and when the time for
    reseeding was limited to a single year, defendant cannot complain.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4061;
    Dec. Dig. ☞1033(9).]

In Error to the District Court of the United States for the Western
District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by David A. Gelvin against the Chicago, Burlington & Quincy
Railroad Company. There was a judgment for plaintiff, and defend-
ant brings error. Reversed in part, and in part affirmed.

M. G. Roberts, of St. Joseph, Mo. (Culver & Phillip, O. M. Spencer,
and E. M. Spencer, all of St. Joseph, Mo., on the brief), for plaintiff
in error.

John E. Dolman, of St. Joseph, Mo. (B. R. Martin, of St. Joseph,
Mo., on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and ELLIOTT, Dis-
trict Judge.

ELLIOTT, District Judge. This is an action brought by the defend-
ant in error, David A. Gelvin (hereinafter referred to as the plaintiff),
against the plaintiff in error, Chicago, Burlington & Quincy Railroad
Company (hereinafter referred to as the defendant), upon a petition
containing two causes of action, set forth in counts numbered 1 and 2
of the petition.

Count 1 of the petition contained proper averments as to the incor-
poration of the defendant railway, its ownership and operation of a
railroad line in and through the county of Holt, state of Missouri, ad-
joining lands therein referred to, belonging to the plaintiff, over which
it ran and operated locomotive engines and trains of cars; that plain-
tiff's said lands, consisting of about 800 acres, were pasture lands,
heavily set in blue grass of the finest quality; that on the 10th day of
August, 1912, the defendant, its servants and employés, were operating
a locomotive over and along defendant's said line of railway, through
and adjoining plaintiff's lands, and so carelessly and negligently man-
aged and operated said engine as to allow fire to escape therefrom, and
that defendant and employés were negligent and careless in using and
operating on its said line of railway a defective engine, improperly
equipped and out of repair, so that fire was permitted and allowed to
escape and did escape, setting fire to the dry weeds, grass, and dead
vegetation which defendant carelessly and negligently permitted to grow
and accumulate and remain on its right of way, adjoining plaintiff's
said pasture and meadow land, which fire was communicated to plain-
tiff's meadow and pasture and spread over and burned and totally de-
stroyed 146.87 acres of said blue grass meadow and pasture, and totally
destroyed the roots and setting of said blue grass, which was alleged

to have been firmly set, rooted, and imbedded in the soil; that at the time of the setting of said fire plaintiff was the owner of 391 head of high grade fat cattle, feeding and fattening upon said blue grass meadow; that the fire, consuming and destroying said blue grass meadow, pasture, and mulch, caused immense volumes of smoke, flames, and sparks to rise upward therefrom, causing a rumbling and roaring noise, by reason whereof plaintiff's cattle were "caused to become and did become scared, terrified, and frightened, and then and there stampeded in their efforts to escape from said fire, smoke, and noise, and said entire herd, containing 391 head of fat cattle, as aforesaid, ran and stampeded in a body over and through said pasture lands, and through timber then and there growing thereon, and over and through deep ravines and streams which then and there extended and meandered through said pasture lands, and over logs and fallen trees and stumps then and there being and lying upon said pasture lands, and said fat cattle in said frightened, terrified, and feverish condition ran and stampeded for a distance of three miles; that the weather on said date was excessively hot, humid, and oppressive, and that said cattle, by reason of the aforesaid conditions, were caused to become and did become excessively heated, feverish, nervous, and excitable, and many of them were bruised, maimed, and crippled by reason of their aforesaid stampede, and one steer died as a result of injuries received therefrom; that because and on account of the aforesaid conditions said cattle lost heavily in weight, became sick, distempered, nervous, uncontrollable, and excitable, and · they became frightened and terrified thereafter at slight noises, and upon six different occasions within ——— days thereafter stampeded together over said lands, because and on account of all the aforesaid conditions resulting directly from the negligent setting out of the aforesaid fire in plaintiff's said pasture by defendant, * * * said cattle were caused to and did lose large quantities of flesh and weight, and refused to eat and take food, water, and nourishment of any kind, to the great damage of plaintiff in the sum of $10,000," with a prayer for judgment in that sum.

The second count contained similar allegations as to the incorporation of the railway defendant, its ownership and management of trains over and across the blue grass pasture owned by the plaintiff, the setting of the fire, the carelessness and negligence of the defendant, and it was further alleged that said pasture lands were heavily set in blue grass of finest quality, and that there was produced from the roots thereof large crops of pasture and grass seed annually, without reseeding; the roots of said grass at all times being thoroughly fertilized and enriched from many years usage as pasture lands for many thousand head of cattle; that said fire spread over and burned and totally destroyed 146.87 acres of said blue grass meadow and pasture, destroying the roots and setting of said blue grass, so firmly set, rooted, and imbedded in said soil as aforesaid, and burning, consuming, and totally destroying said mulch being formed upon, covering, and forming a part of said soil, as aforesaid, by reason whereof plaintiff averred he had sustained damages in the sum of $7,000, and demanded judgment for that sum.

To this petition the defendant filed its answer, consisting of a gen-

238 F.—2

eral denial. Thereafter, at the September, 1914, term, this cause was heard, and on September 29, 1914, the jury returned the following verdicts:

"We, the jury, find the issues for the plaintiff and assess his damages at $5,400 on the first count of the petition.
"[Signed]                                    J. P. Tucker, Foreman."
"We, the jury, find the issues for the plaintiff and assess his damages at $2,115.65 on the second count of the petition.
"[Signed]                                    J. P. Tucker, Foreman."

Judgment was thereafter, on January 8, 1915, entered in favor of the plaintiff and against the defendant upon the two verdicts, for the aggregate sum of $7,515.65, together with his costs. Defendant had theretofore moved for a new trial, the same having been denied, and defendant prosecutes this writ of error.

[1] Assuming that there is a cause of action stated in the first count of the petition for damages to personal property, to wit, the cattle of the plaintiff, there is little dispute between the parties as to the proper measure of damages and the law applicable in the ascertainment of the damage in such cases. It seems to be conceded by all parties that the true measure of damage to personal property that has not been entirely destroyed, as applicable to the plaintiff's cattle in this case, is the difference between the value of the cattle in the plaintiff's pasture on the 10th day of August, 1912, immediately before the fire, and their value on the farm there at Maitland after the fire, if there was any such difference.

[2] The controversy presented here arises upon the objections of the defendant to the method employed by the plaintiff in proving this damage. The plaintiff, having established the fire, the negligence of the defendant, and the injury to the cattle, the simple issue for determination by the jury was the amount of damage suffered by the plaintiff by reason of the injury shown, and that damage should have been measured by the difference in value immediately preceding the fire and immediately after the fire, at the place where the cattle were kept. Instead of confining the proof to the value of the cattle before the fire and the value of the cattle after the fire, the plaintiff was permitted, over the objection of the defendant, to testify, in substance, the kind and quantity of feed he fed the cattle both prior and subsequent to the fire, and was permitted to state his opinion, based upon the conditions surrounding the feeding of the cattle, as they existed prior to the fire, and if there had been no fire, and upon his experience and observation in previous years as a cattle feeder, as to the amount of weight or flesh that these cattle would each have put on per day if fed continously on the same feed and pasture from the date of the fire until he sold them, in October of the same year.

He was further permitted to testify that skilled and experienced cattlemen can tell, with a reasonable degree of accuracy, the amount of weight a steer will put on and ought to put on when fed a given amount of corn or other feed; then to describe the kind, character, size, and weight of these cattle when he put them in this pasture the February before the fire; that they were large-framed cattle; and that, taking into consideration the kind of cattle, the breed of

cattle, the frame of the cattle, and the character of the cattle that he had in his pasture, and the kind and quantity of feed that he fed them both before and after the fire, he was permitted to state that they would *probably* have put on and ought to have put on 2½ pounds of flesh each per day; that he sold the cattle in Chicago in October upon four different dates, from the 5th to the 23d, inclusive.

He was further permitted to testify to the weight of the cattle in Chicago, that the selling price averaged $9.16 per hundredweight, and then to testify to what, in his opinion, those cattle would have weighed in Chicago at the time of the sale, if fed as he had fed them, the amount that he specified that he did feed them per day per head, had the fire not occurred. He was permitted to testify, in substance, that the class of cattle that these cattle were rated with, as they actually were, when he sold them in Chicago, was a different class from that which they would have been in, had they not suffered the damage claimed by plaintiff; that they would have been heavier, if it had not been for this damage, by taking on a greater quantity of flesh, and, using plaintiff's language:

"These cattle, if they had had the proper handling, would have come right up the length of time they were fed; they didn't have to be fine; they had the weight and feed. They couldn't get heavy cattle. They were scarce, and they commanded a high price. Their contracts were out for heavy cattle, and they couldn't get them. These cattle would have brought $10.75 per hundred quick, if they had had the weight that they would have had, if they hadn't been in the fire."

There was other testimony of expert cattle feeders, corroborating the estimates as to the amount of flesh these cattle would and should have put on under the conditions under which they were fed, if there had been no fire, and also testimony supporting the testimony of the plaintiff that the entire herd of cattle sold in a different classification than they would if they had taken on this extra flesh more than they did, and that they sold for a price of more than $1.50 per hundredweight less than they would if they had put on the additional flesh, and thereby had been subject to classification with the heavier cattle, and that the plaintiff, therefore, was damaged on every hundredweight of cattle that he sold, the difference between what they did sell for and what it was alleged they would have sold for if they were heavier.

The plaintiff, on cross-examination, stated that the one steer that it was alleged in the petition had died was tramped by the other cattle on the 6th day of September; that the cattle were never treated for injuries; that all of the cattle were fed right along after the fire, and that immediately after the fire the cattle did not go off their feed; that the time the cattle went off their feed was when they got to nipping the short grass that grew in the pasture where it was burned over, and that made their teeth sore, and they went to scouring, and then they went off their feed; that he didn't notice anything about their eating after the fire, and before they got to scouring from eating the short grass, which was some weeks after the fire; that

the cattle ate well up to the time of their eating the short grass, making their teeth sore and scouring them.

Upon cross-examination of the plaintiff, the record discloses the following questions and answers:

"Q. And that is what made them lose flesh? A. Well, first they was overheated, and all of it coupled together. Q. Well, you say that their feed was normal up to the time they went on this burned spot? A. They ate; but they can eat, and still not do any good. Q. I say that they ate normally from the time of the fire up to the time they went back to eat on this burned spot? A. I understand you now. I didn't notice anything but what they ate what they needed. Q. You didn't notice anything out of the ordinary? A. No, sir; I didn't. Q. But when they went back on this burned spot, then you noticed that they were off their feed, and that they were scouring? A. Yes, sir. Q. And from that time on they didn't take on any more flesh? A. No, sir. Q. And in your opinion as a stockman that was what caused it; their going back on that burned spot and getting off their feed? A. No, I don't say that; I say that from getting overheated and that together, both of them together."

There was other testimony of this character, but this is sufficient to show the application by the court, upon the trial of the case, of the law governing the ascertainment of damages sustained by the plaintiff. In instructing the jury the court said:

"The court instructs the jury that, if you find for the plaintiff on the first count of the petition, then your verdict should be for the difference in the value of the cattle immediately before the fire and their value immediately after the fire, if there was any such difference. Of course, that is taken in connection with what the court has already said as to what the value of the cattle *would have been*, according to rules which you must deduce from the evidence, whatever you may deduce from the evidence as to their value *at the time they were placed upon the market*, the place of their value, of course, being at the pasture at Maitland, in Holt county, Mo., and governed by such other rules respecting the ascertainment of value as the court has stated and as appear from the evidence."

We think the inquiry as to the probable gain of these cattle in the event there had been no fire, and therefore the probable weight at the time of their sale in Chicago, in the fall succeeding the fire, the classification of the cattle as to weight, placing them in the lighter class, the fact that heavy cattle, in the fall, at the time of marketing the cattle, were in better demand, and therefore brought a higher price at that time and place, without even a suggestion that the heavier cattle were in better demand than lighter cattle, at the time of the fire, or that heavier cattle had a greater value, at Maitland, either before or after the fire, are not proper elements to be considered by the jury in determining the value of the cattle just prior to the alleged injury and the value just subsequent thereto; the damage being the difference, if any.

The alleged damage to the cattle, through failure to take on flesh, consequent loss of profits by reason thereof, the fact that heavier cattle sold for more than light cattle at Chicago some months subsequent to the fire, the price received for these cattle at that time and place, in the absence of anything like definite proof that even if the cattle did not take on as much flesh as it was thought by the owner and others that they should, that this was caused solely by reason of any injury sustained by the cattle as a direct consequence of the

fire, are uncertain, conjectural, and purely speculative, and in our judgment the jury should not have been permitted to consider either of these elements in the ascertainment of the value of the cattle in the pasture at Maitland after the fire. Davidson v. Mich. Cent. Ry. Co., 49 Mich. 428, 13 N. W. 804; St. Louis, I. M. & S. Ry. Co. v. Biggs, 50 Ark. 169, 6 S. W. 724; Lewis v. Burlington Ins. Co., 80 Iowa, 259, 45 N. W. 749.

[3] It is admitted by the plaintiff in his cross-examination that the cattle went off their feed, not immediately after the fire, but some weeks later, when they were permitted to feed upon the strip that had been burned over. The weeds and fresh grass made their teeth sore, scoured them, and they went off their feed. It is true the court instructed the jury that nothing could be allowed the plaintiff by reason of this fact, but that does not relieve the record of the fact, nor does it deprive the defendant of the benefit of the self-evident fact that injury must have followed this throwing them off their feed and scouring.

There is no contention in this record that if these cattle ate this new grass and weeds some weeks after the fire, and were damaged thereby, that the fire was the proximate cause of the injury, and therefore that plaintiff can recover from the defendant. That such an alleged damage would be too remote is conceded, and the fact that these cattle did eat this new grass and weeds, that it did affect them, with nothing in the record to determine the amount of the effect, or the relative bearing that this effect had to the original injury, if any, nothing upon which a jury could predicate the definite and certain determination of the injury as it originally existed, demonstrates, we think, the necessity for the rule that we here invoke, that all of this evidence of value in Chicago, and estimated weight and estimated price of heavy cattle in excess of light cattle, some months later than the date of the fire, constitutes no basis upon which to predicate such damage, is conjectural and purely speculative.

There was not only no attempt to show just how much of this damage occurred from the fire, but in addition to the eating of this grass and the sore teeth and scouring of the cattle, the fact that they would not eat, testified to by the plaintiff, one of the expert witnesses qualified his statement as to what they should have gained per day per head, upon the statement "if the flies didn't bother them." There was no evidence as to whether or not the flies did bother them. All of this simply illustrates the uncertainty of this class of testimony, and the impossibility of determining therefrom with any reasonable degree of certainty the value at a time immediately succeeding the fire.

In addition to the foregoing, we may add that it is alleged in the pleading of the plaintiff, as a part of its issue, that at other times, subsequently and before the sale in October, these cattle repeatedly stampeded. These facts, too, are too remote to be considered as elements of damage, and the court so instructed the jury; but that does not alter the situation as to the uncertainty of the proofs that were

received, and is an additional fact in the light of which they must necessarily be considered.

On the face of this record, then, the cattle stampeded at various times at a date some time subsequent to the fire, these cattle suffered damage from scouring through eating green grass, their teeth became sore, and they refused to eat. Yet no damage is predicated by the plaintiff upon these incidents. The plaintiff, however, seeks to recover for the loss of flesh, attributing it to the one cause, and to prove it by testimony of values, first, at a time other than immediately succeeding the injury; second, by showing the prices received for the cattle at a place different and at a date long succeeding the date of the injury; third, by showing the gain of these cattle succeeding the fire, and, by expert testimony, attempting to show what they ought to have gained, and therefore a loss of the difference; fourth, by showing the prices of heavy cattle at Chicago at a time long subsequent to the date of the injury in question, with no showing as to comparative market conditions, and showing that these cattle were actually light, assuming that they would have been heavy if they had not been injured, and therefore that a loss of more than $1.50 per hundred was sustained by the plaintiff upon the entire herd of cattle.

[4] Instead of this record, it was incumbent upon the plaintiff to show, with reasonable certainty, what damage flowed from the alleged injury, by showing the value of the cattle immediately before and immediately after the injury, at the farm of the plaintiff. The record showing different conditions, occurring subsequent to the fire, naturally affecting the gain in weight of these cattle, for which it is conceded the defendant could not be held responsible, without any proof of how much of the damage resulted from these conditions as distinguished from the damage resulting from the alleged injury, with nothing in the way of testimony of any witness pretending to even estimate the proportion of the damage resulting from either of the causes, is far short of that reasonable certainty required by law, and upon such a record a jury cannot arbitrarily apportion a part, or all, of the proven damages to the cause for which the defendant is responsible (Knowlton v. C. & N. W. Ry. Co., 115 Minn. 71, 131 N. W., 858), and the verdict of the jury upon the first cause of action, predicated upon a consideration of this evidence, is erroneous.

[5] This record presents a further question upon this first cause of action, upon which decisions in various courts have not been uniform. It is whether, in an action to recover damages for an injury sustained through the negligence of another, there can be a recovery for an alleged injury caused by mere fright. It will be noted that the cause of recovery alleged in the petition in this case is for damages sustained by the plaintiff by reason of—

"fire * * * spreading over the * * * pasture and meadow lands, * * * caused immense volume of smoke, flame, and sparks to arise upward therefrom, causing a rumbling and roaring noise, by reason whereof plaintiff's said cattle * * * were caused to become and did become scared, terrified and frightened, and then and there stampeded in their efforts to escape from said fire, smoke, and noise, and said entire herd, containing 391 head of

fat cattle, as aforesaid, ran and stampeded in a body over and through said pasture lands and through timber then and there growing thereon, and over and through deep ravines and streams which then and there extended and meandered through said pasture lands, and over logs and fallen trees and stumps, then and there being and lying upon said pasture lands, and said fat cattle in said frightened, terrified, and feverish condition ran and stampeded for a distance of three miles; that the weather on said date was excessively hot, humid, and oppressive, and that said cattle, by reason of the aforesaid conditions, were caused to become and did become excessively heated, feverish, nervous, and excitable, and many of them were bruised, maimed, and crippled by reason of their aforesaid stampede, and one steer died as a result of injuries received therefrom; that because and on account of the aforesaid conditions said cattle lost heavily in weight, became sick, distempered, nervous, uncontrollable, and excitable, and they became frightened and terrified thereafter at slight noises and upon six different occasions within ———— days thereafter stampeded together over said lands, because and on account of all the aforesaid conditions resulting directly from the negligent setting out of the aforesaid fire in plaintiff's said pasture by defendant," etc.

It is contended by the defendant that this damage alleged to have been sustained by the plaintiff is not the natural and probable consequence of the act of negligence on the part of defendant in setting out the fire complained of; that the alleged injury is not one that could have been foreseen or reasonably anticipated as the probable result of the alleged act of negligence on the part of the defendant in setting out the fire. It will be observed that the cause of action alleged in the first count of the petition is predicated upon the fright of the cattle by reason of the negligence of the defendant, and in this class of cases it has been held that if the wrong and resulting damage are not known by common experience to be natural and usual in sequence, and the damage does not, according to the ordinary course of events follow from the wrong, then the wrong and the damage are not sufficiently conjoining and concatenated as cause and effect to support an action. Teis v. Smuggler Mining Co., 158 Fed. 260, 85 C. C. A. 478.

[6] Things or results which are only possible cannot be spoken of as either probable or natural, for the latter are those things or events which are likely to happen, and which, for that reason, should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency and regularity as to become a matter of definite inference. To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared. S. S. Pass. Ry. Co. v. Trich, 117 Pa. 390, 11 Atl. 627, 2 Am. St. Rep. 672.

[7] Was the fright of the plaintiff's cattle, from the roar of the fire, and their stampede caused thereby, and their consequent failure to take on flesh as they otherwise should have done, the natural and probable consequence which a reasonable man might have foreseen, as engineer of this engine that set the fire, as a probable result of such negligence? That such results are not usual, not the common experience, is evidenced by the suggestion that able counsel, appearing

for both plaintiff and defendant in this case, have been unable to cite a single case of the report of a fire having such results, and no testimony whatever was offered upon the trial to prove that such results were the natural consequence of the alleged negligence of the defendant, or that the injury complained of by the plaintiff was the probable consequence of the alleged negligence of the defendant or that it was likely to occur, according to the usual experiences of mankind. That this is the true test which must be applied to the pleadings and record as it appears here, and that such test of responsibility is applicable to a case like this, has been held, and that such wrongdoer is not responsible for a consequence which is merely possible according to occasional experience, but only for a consequence which is probable according to ordinary and usual experience. Teis v. Smuggler Mining Co., supra; Stone v. Boston & A. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.

[8] If this alleged injury to the cattle of the plaintiff was one that could not have been foreseen or reasonably anticipated as the probable result of the alleged act of negligence on the part of the defendant, it is not actionable, being either the remote cause or no cause whatever of the injury. Cole v. German Savings & Loan Society, 124 Fed. 113, 59 C. C. A. 593, 63 L. R. A. 416.

[9] The facts in this case are not in dispute, and we think the court is able upon this record to say that the injury is the remote and not the proximate result of the defendant's acts, and therefore it would have been proper for the trial court to so direct the jury. Stone v. Boston & A. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; St. Louis Cattle Co. v. Gholson (Tex. Civ. App.) 30 S. W. 270; S. S. Pass. Ry. Co. v. Trich et ux., 117 Pa. 390, 11 Atl. 628, and citations; Brandon v. Mfg. Co., 51 Tex. 121.

Considering this last question from another angle, no claim is made by the plaintiff in his proof that these cattle were burned by the fire, or came into physical contact therewith, or received physical injury as a result of the negligent act of starting the fire. The alleged damage is predicated upon the claim that the cattle were frightened, suffered nervous shock from the roar and noise of the flames, and as a consequence of such nervousness ran and became overheated, and subsequently, during the period of 80 days, gained about a pound a day, instead of 2½ to 3 pounds a day. Is this consequence too remote from the carelessness of the engineer in allowing the sparks to escape, and the carelessness of the section men in failing to burn the weeds along the right of way?

[10] It has been held that redress for nervous shocks and fright, and their consequent bodily ailments, is not permitted, for the reason that such damages are too remote, and to hold a defendant liable for failure to guard against fright, and the consequences of fright, would open a wide door for unjust claims which could not be successfully met. Courts practically universally hold that bodily ailments to human beings, due to fright caused by negligence, are not actionable, and it has been held that no exception should be made to dumb brutes—on the contrary, that the same rule applies to them. Lee v.

City of Burlington, 113 Iowa, 356, 85 N. W. 618, 86 Am. St. Rep. 379. To the same effect, see Mitchell v. Rochester Ry. Co., 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604.

Assuming, therefore, the negligence of the defendant in the management of its train, and failure to burn the dry grass upon its right of way, and that the fire was set negligently, is the plaintiff entitled to recover for such negligence which occasioned the fright and alarm on the part of plaintiff's cattle, resulting in the injury above mentioned? Though the authorities are not entirely harmonious on this question as applied to persons, we think the more dependable and better considered cases, together with public policy, unite to sustain us in holding that the plaintiff cannot recover for injury occasioned by fright. Mitchell v. Rochester Ry. Co., supra; Western Union Tel. Co. v. Wood, 57 Fed. 471, 6 C. C. A. 432, 21 L. R. A. 706.

The foregoing cases apply the rule to persons, but we can see no good reason for failure to apply the same rule to animals. If it be admitted that no recovery can be had for fright occasioned by the negligence of another, it is exceedingly difficult for us to understand how a defendant would be liable for its consequences. If an action cannot be predicated upon fright, it would seem that it necessarily follows that a recovery cannot be had for injuries resulting from such fright. That the result may be a real damage does not change the principle. That results might be serious merely shows the degree of fright or the extent of the damage. It seems to us clear that the right of action must still depend upon the question whether a recovery may be had for fright. If it cannot, then an action ought not to be maintained whether the consequences are grave or trivial. It seems to us the logical result is that no recovery can be had for mere fright, and further that none can be had for injury which is the direct consequence of it. In Mitchell v. Rochester Ry. Co., supra, the court said:

"If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigation in cases where the injury complained of may be easily feigned without detection, *and where the damages must rest upon mere conjecture or speculation.*"

We think this suggestion of this court meets the situation as we find it upon the record in this case—a verdict resting upon proofs largely founded upon conjecture and speculation. We are therefore of the opinion that no recovery can be had under the first cause of action set forth in plaintiff's petition herein, and therefore that the judgment upon the first count of the petition should be reversed.

We now come to a consideration of the assignments of error upon the cause of action stated in the second count of the petition. Defendant objects to the measure of damages adopted by the court for the determination of the issue of the amount of damage sustained by plaintiff by reason of the destruction of the grass in the pasture.

[11] We have carefully examined the record of the trial, together with the instructions of the court upon this count, and especially with reference to the law as to the measure of damage. This is a question that is not open to discussion, in the light of the repeated decisions of

the courts of the state of Missouri, cited and relied upon by counsel for both plaintiff and defendant; and an examination of the court's instructions, together with a careful reading of all of the testimony, convinces us that no error appears in the record. We find that the trial court stated the general rule in conformity with decisions of the courts of that state, in substance, that for the destruction of the pasture the measure of damages must be the fair cash rental value of the land for the season or part of season during which the · destruction took place, together with such time as was essential to restore the pasture by process of reseeding, and then the court qualified this general instruction as follows, in substance:

"Beyond the year 1913 you are not permitted to extend any estimate of damages. It may be that, because of injury to the soil, the crop during the succeeding years would not be as strong; but as you have seen from what I have stated, and from what I have read, the law contemplates that the process of reseeding in the usual course restores a crop of this kind, where there is no damage or injury to the land itself, and that, as I have said to you, we are not considering in this case. * * *"

Remembering that this fire occurred in August, 1912, we think the court, in these instructions, and during the entire conduct of the trial of the issue, gave to the defendant the utmost it could ask, consistent with said decisions of the courts of Missouri, cited by both parties to the record, there being no disagreement as to what these decisions hold. There is therefore no necessity for citing them here. The established rule of damage having been properly applied by the trial court, we find no error in the record upon the trial of the issue set forth in the second count of the petition. The judgment upon the second count of the petition is affirmed.

The case is remanded for proceedings consistent herewith, and with the opinion of the Supreme Court of the United States in Slocum v. New York Life Insurance Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

· HOOK, Circuit Judge, concurs in the result.