## UNION TRUST CO. OF CLEVELAND, OHIO, et al. v. WOODROW MFG. CO. et al.*

### No. 9005.

Circuit Court of Appeals, Eighth Circuit. March 16, 1931.

*Rehearing denied May 12, 1931.

Casper Schenk, of Des Moines, Iowa (Charles S. Bradshaw and Rex H. Fowler, both of Des Moines, Iowa, on the brief), for appellants.

Robert J. Bannister, of Des Moines, Iowa (H. H. Stipp, E. D. Perry, and Vincent Starzinger, all of Des Moines, Iowa, on the brief), for appellees.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

STONE, Circuit Judge.

This is an action by a mortgagee for waste of the mortgaged property. From a judgment on a directed verdict in favor of defendants, plaintiffs bring this appeal.

At the time this mortgage was executed, the Woodrow Manufacturing Company (mortgagor therein) was manufacturing washing machines in a plant, equipped therefor, located at Newton, Iowa. Thereafter this entire property was sold. The purchasers organized a new corporation, and removed all, or practically all, of the movable machinery and equipment to Pella, Iowa, where it was installed and used to manufacture washing machines. Thereafter there were foreclosure sales under this mortgage and under a prior mortgage upon part of the same property. These sales were of the dismantled real estate in Newton and of the machinery and equipment as severed therefrom. The proceeds of such sales left a deficiency on the prior mortgage indebtedness of something over $14,000; $5,342.68 was realized from property not covered by the prior mortgage for application in payment on this mortgage. This action is for a balance of $35,000 due on this mortgage indebtedness, and is based upon the waste caused by the above removal of machinery and equipment from the plant at Newton. The theory upon which the trial court directed a verdict was that the evidence failed to show that these plaintiffs were damaged by this removal, since it did not show the value of the equipped plant at Newton would exceed the sale prices of the real estate and severed machinery and equipment by more than the amount necessary to meet the deficiency on the prior mortgage indebtedness.

The questions presented here have to do with such sufficiency of the evidence and with rulings on evidence.

■■■ The matter of the sufficiency of the evidence requires construction of the mortgage to ascertain what it covered and examination of the evidence as to values.

This mortgage was to secure an indebtedness of $37,000; was expressly subject to a prior mortgage (for $40,000); and contained provisions here pertinent as follows:

It covered described real estate in Newton, Iowa, "together with all buildings and improvements situated thereon, and all machinery, line shafts, belting, factory equipment, fixtures, tools, furniture and appurtenances thereto belonging or hereafter situated in and contained in said buildings and used by the first party in connection with its manufacturing business conducted on said premises; provided, however, that the second party shall have the right to remove and dispose of any part of said personal property which shall become obsolete or unfit for further use. * * *

"Said first party shall not suffer waste, shall pay all prior encumbrances, the interest thereon when due, and all taxes and assessments upon said property before delinquent; also all personal taxes, shall keep the buildings and equipment thereon insured to the satisfaction of said second party for at least Seventy-seven Thousand Dollars ($77,000.00), assigning and delivering all policies and renewal receipts to the holder of prior encumbrances if demanded. * * *

"A failure to comply with any of the agreements hereof shall cause the whole debt at once to become due and collectible, at the option of second party without notice, and said second party or assigns shall be entitled to have a receiver appointed to take immediate possession of said real estate, buildings, equipment, fixtures and personal property, stock and merchandise therein, and operate said plant and manufacturing business, and to have the net profits thereof applied on said indebtedness or on any prior encumbrances, if second party so elects, until the same shall have been fully paid. Said tak-

ing possession shall in no way retard collection or foreclosure."

The above terms in the mortgage are clear that it covered the real estate and designated buildings with all machinery and equipment as a plant or unit, and was not merely a mortgage upon the separate parcels or pieces. The expression that the mortgagor had "the right to remove and dispose of any part of said personal property *which shall become obsolete or unfit for further use*" (italics ours) is clear proof that none of such personal property was to be removed except because of obsolescence or unfitness. If there were need of further proof of the expressed intention of the parties, it is found in the provision for a receivership. This provision contemplated that the plant (as a going operable factory) and all "stock and merchandise therein" shall be taken over and operated as such. We have no doubt that this mortgage covered the property as a unitary operable plant and that the removal of machinery and equipment was the commission of waste forbidden by the mortgage and for which appellees are liable.

Even though such liability existed, if no damage thereby was shown, the appellants could not recover, because this is an action for damages through such waste. The trial court determined no such showing of damage was made because, the court thought, there was no showing that the damage from the above removal would exceed the deficiency on the prior mortgage, and therefore nothing would be left for appellants under this mortgage. We are unable to agree that there was no evidence which would justify a verdict for a larger amount.

The measure of damages here is the difference in value of the equipped plant before it was dismantled and the value of the parts thereafter. Chicago, B. & Q. R. Co. v. Gelvin, 238 F. 14, 18, L. R. A. 1917C, 983, this court. There is evidence as to value before dismantling as follows. One witness placed it at from $100,000 to $110,000. Two prospectuses issued by Woodrow Washing Machine Company (appellee) and the individual appellees state: "The Company now has invested in buildings and ground at Newton [this property], approximately $177,000," and contains a certified balance sheet showing the depreciated value of the property at Newton to be $200,167.37 (excluding the value of a truck and of patents). As to the value of the parts after removal, there was evidence that the land and buildings were worth from $25,000 to $35,000; that, at foreclosure,

the real estate sold for $26,039.86 and the machinery and personalty for $7,400—a total of $33,439.86. A comparison of this evidence as to value before removal, with the evidence as to value afterward, shows a margin of more than enough to pay the deficiency on the prior mortgage as well as the entire claim of appellants. This was sufficient evidence of damage beyond the deficiency of the prior mortgage to justify submission to the jury.

As the case must be retried, there are several matters which have been presented to us and which should be determined. The first of these has to do with a motion of appellants to strike two parts of appellees' answer. The court sustained the motion in part, and struck out one of the parts of the answer aimed at by the motion. The court denied the motion as to the other part, and such denial is here complained of. The portion of the answer involved in this part of the motion is contained in "Division III" thereof. The general import of this "division" of the answer is that the foreclosure of the prior mortgage had divested the lien of this mortgage, and that the foreclosure of this mortgage (on the severed parts) had resulted in the appellants receiving the full value of their mortgage lien. The concluding paragraph (preceding the prayer) is as follows:

"That by said proceedings, the full value of said property, both real and personal, has been realized and devoted to the satisfaction of the mortgages thereon in the order of their priority. That the said real property brought as much as it would have if occupied by a defunct and failed manufacturing corporation in Newton, Iowa, and that the said personal property brought more, in behalf of the said liens for which it was sold, in its operating condition and in use in an actively going manufacturing concern in Pella, Iowa, than if it had been left idle in disuse at Newton, Iowa, and that the plaintiffs are and have been in no manner damaged or injured by the removal of said personal property consisting of machinery and equipment as described in plaintiff's petition from Newton to Pella, Iowa."

The motion sought to strike the above-quoted paragraph and also the expression "thereby the plaintiff received the full value of their lien" having reference to previous allegations that through foreclosure of this mortgage there had been full realization of value.

The court properly ruled in denying the motion to strike out the above expression

"thereby the plaintiff received the full value of their lien." It is a question of fact whether the foreclosure sale resulted in full realization of the value of the lien. The lien was upon the plant as an equipped unit. The value of such unit was the security provided by this mortgage. The entire plant, as severed portions, was sold under the foreclosure of this mortgage—there being separate sales of the real estate at Newton and of the machinery which had been removed therefrom and placed in another plant at Pella. If these severed parts were as valuable as they had been when united into an equipped plant at Newton, there would be no loss of value of the mortgaged security through the separation and removal, and, therefore, no damage therefrom. Appellees were entitled to present and try this issue, which was that the removal had not lessened the value of the entire security provided by this mortgage. This was an issue of fact.

The situation as to the other portion of the answer (the paragraph above quoted) is different. Into that paragraph is injected a new consideration, which is that the proceeds from the foreclosure of this mortgage were as much or more than the value of the equipped plant at Newton would have been "if occupied by a defunct and failed manufacturing corporation in Newton" and if the machinery, etc., "had been left idle in disuse at Newton." This injected the consideration of an idle, unused plant at Newton occupied by "a defunct and failed" corporation as an important element in determining the damages arising from the waste of dismantling that plant of its equipment. There is no allegation anywhere in the answer that there was the situation of such an idle plant ever existing. Nor, if it is a legal excuse for so doing (upon which we make no intimation), was it alleged that preservation of the value of such mortgage security had a part in the motive impelling the dismantling of this plant. On the contrary, "Division II" of the answer alleges that the purchaser of the property "determined that it could more profitably and to better advantage for itself and its stockholders, operate its business at Pella, Iowa, and pursuant to said determination, obtained a factory site and building at Pella, Iowa, and removed thereto the said property, including said machinery, equipment and supplies," and that it had a right so to do. In this state of the pleadings, there was no place for the issue thus sought to be made by this paragraph of the answer, and it should have been stricken therefrom.

While we are not judging the pleadings by the evidence introduced, yet as this case is to be retried, as the evidence is here so that we can see from it what the pleader had in mind, as an endeavor may be made to amend the answer to admit the same character of evidence, and as we think it proper to anticipate and prevent any possible error of that character which might result in prolonging this litigation and, possibly, a further appeal here, we will notice this matter. The evidence in question is to the effect that the mortgagor had become financially involved, and, without financial aid, would have been compelled to suspend operation of the plant at Newton. This evidence is met by the undisputed evidence that the citizens of Newton had agreed to raise $125,000 to keep the plant operating at Newton. Also the evidence is clear that there was no cessation of operation at Newton until just before the equipment was removed to Pella. However, we are not now determining matters of evidence but merely stating sufficient of the evidence to give an idea of its trend. As to the pleadings, the question is whether impending insolvency which would result in shutting down this plant can have any legal connection with the right to dismember the plant or with the measure or amount of damages, if any, resulting to the security of the mortgage from such dismemberment. We think there is no such connection. This mortgage created a status as to this property which could not, without consent of the mortgagee, be altered or changed by the mortgagor or those acting under it. While the misfortunes of the mortgagor may affect the value of the security, yet the mortgagor (or those claiming under it) cannot, in an attempt to remedy its condition, injuriously affect the security and deal with it in a manner forbidden by the mortgage. Therefore the circumstance that the mortgagor might have been compelled to close the plant, but never did so, has no connection with the right to remove the equipment nor the measure nor amount of any damages caused by such removal. Another consideration bearing on this matter is the above quotation from this mortgage relating to operation by a receiver. Under that provision of the mortgage, the mortgagee had the right to continue operation by a receiver as soon as a default on the mortgage occurred.

A related matter covered in the evidence (though not in the pleadings) is that this plant at Newton was used to manufacture washing machines under patents owned by

the mortgagor. These patents were sold by the mortgagor to other of the appellees who caused this factory to be dismantled. Also there is evidence that some of the machinery in this plant was suitable only for manufacturing washing machines in accordance with the patents. Appellees contend that the mortgagor had the right to sell these patents, and, having done so, there was no further right in it or the mortgagee to continue such manufacture. If any right of title or use of such patents passed under this mortgage, it is clear that such would be unaffected by any subsequent transfer of the patents by the mortgagor without consent of the mortgagee. When this mortgage was executed on this plant, so used and so equipped, when it provides that the property covered is the land, buildings, and all machinery, etc., located therein, "and used by the first party [mortgagor] in connection with its manufacturing business conducted on said premises," when it provides that the mortgagee may (through a receiver) take over and operate this "plant and manufacturing business" until its debt is paid from the net proceeds of such operation, and when it appears that such operation would be effectually prevented without the right to do so under the existing patents, we have no doubt that the mortgage passed to the mortgagee the right to operate under those patents at that plant for the above purpose and term. Any sale of the patents by the mortgagor was subject to that right. This being true, the sale of the patents by the mortgagor has no bearing upon the measure or amount of damages, if any, arising from the dismantling of this plant.

There remain several matters relating to the admission of evidence. The first of these is a contract offered by appellants and excluded. In order to understand the import of this contract, it is necessary to briefly state its place in the history of these transactions. The purchasers of this property at Newton were certain of these appellees who lived and had business interests in Pella. On June 23, 1926, they made two contracts with the mortgagor and the stockholders thereof. One of these contracts related to purchase of certain treasury and outstanding stock of the mortgagor, giving corporate control of that company. The other related to the removal of the "business and plant" to Pella. The purposes of the contract now under consideration were to cancel the above contract for sale of stock, to confirm the contract of removal of the plant and business, and to operate as a sales contract of the property of the mortgagor. It recites the earlier contracts, the purpose to incorporate the Woodrow Washing Machine Company (an appellee here) to take over the business. It describes the property sold (including that covered by this mortgage). It states that:

"(3) The parties of the second part agree to pay to the parties of the first part and the parties of the first part agree to receive from the parties of the second part, in full of the purchase price of the property and each item thereof above described, a sum of money to be arrived at as follows:

"The real estate and personal property, plant, machinery, rights and equipment to be valued as follows: * * *

"(d) The real estate above described, plant, machinery and equipment including each of the items upon the balance sheet of the Woodrow Manufacturing Company dated December 31, 1925, under the head 'Fixed Assets', to-wit: land, paving, building, heating plant, lighting equipment, machinery and equipment, patterns and jigs, furniture and fixtures, and trucks, shall be taken at the depreciated value shown on said balance sheet of December 31, 1925, to-wit: $216,764.97 to which shall be added the actual cost of betterments and additions during the year 1926 and from which shall be deducted the usual and customary depreciation for the year 1926. * * *

"4. In case of any disagreement arising between the parties as to the inventories to be taken, or the valuation or count therein or the depreciation to be taken off, as provided in paragraph 3 hereof, the same shall be decided by arbitration by three persons, one selected by the first parties, one by the second parties, and one by the two thus selected and their decision shall be binding upon the parties hereto."

It then provides for payment by certain deductions, assumptions of obligations of the mortgagor, and issuance of common stock in the corporation to be formed to the stockholders of the mortgagor. It provides for assignment of the contract to the new corporation and release of these purchasers when the new corporation assumes the obligations under this contract.

The purpose of appellants in offering this contract was to secure the statement in paragraph (d), above quoted, of the value of this "plant, machinery and equipment" covered by the mortgage. This was sought on the theory that it was a statement against interest or an admission by appellees. Every one of these appellees was a party to that contract except the new company (Woodrow

Washing Machine Company), and it was organized by some of these appellees with the purpose of taking over this contract, and did so by a contract of assignment thereof. This statement of value was one of the important statements of fact upon which the contract was based, and was the major element of value covered by the conveyance. It was made upon August 3, 1926, and related to a value shown by the mortgagor's balance sheet for December 31, 1925. It included little property not covered by this mortgage. It covered a character of property not so susceptible of change or depreciation or displacement that it could not be properly connected by evidence with the value as of the date of dismantling (early in July, 1927). In fact, it would of itself be some, though weaker, evidence of value in July, 1927, without such connecting evidence. We think it was error to exclude this contract and the assignment thereof to the Woodrow Washing Machine Company.

Another piece of evidence offered and excluded was a later contract (April 21, 1927). This contract was between the same parties as the other contract and also the new company (Woodrow Washington Machine Company) and three of the above parties as trustees. This contract was intended to modify the former contract; to dispose of the real estate at Newton and to "remove said plant" to Pella in order to "complete the sale of stock" of the new company; and to extend the time of performance to July 1, 1927. It provided (in paragraph 1) that the mortgagor should retain the real estate at Newton, but the new company would remove "all of the machinery, fixtures, equipment and all * * * property * * * except only the ground and buildings thereon, and there shall be credited upon the amount of the purchase price to be paid by the Woodrow Washing Machine Company to the Woodrow Manufacturing Company on account of the retention of said grounds, buildings and appurtenances thereunto belonging, the sum of One Hundred Thousand Dollars ($100,000.00)."

Also the mortgagor was given a five-year option to purchase common stock in the new company "equal to the equity in the real estate retained by the Woodrow Manufacturing Company [the mortgagor] referred to in Paragraph (1) hereof." Also it provided:

"It is further agreed that in view of the fact that the Woodrow Washing Machine Company may have to pay a certain amount of the mortgage given to R. W. Sheffer of South Euclid, Ohio, existing against the building and real estate above referred to and creating a lien thereon for the sum of Thirty-seven Thousand Dollars ($37,000.00), and in order to obtain the right to move the machinery and equipment in said building and to have the same released from said mortgage, that any amount which the second parties may have to pay to obtain the release of said machinery and equipment from said mortgage, not to exceed, however, the sum of Twelve Thousand Dollars ($12,000.00) shall be credited upon the purchase price of the property described in said contract of August 3, 1926."

We think this contract was admissible as an admission against interest by the appellees for the purpose for which it was offered which was to show value.

Two prospectuses of the new company were offered by appellants in connection with examination of their witnesses and in connection with cross-examination of appellees' witnesses. In its ruling (at the end of the case) upon the admissibility of this evidence the court said:

"If this case were going to the jury under the instructions of the court and the jury had to decide these vital questions involved, I should not permit that evidence to be admitted, but in view of the ruling of the court in order that if I should possibly be wrong you will have the benefit of it I am admitting it."

These prospectuses were issued by the new company for stock sale purposes. The record fails to show definitely when these were put out. However, the earlier one was in circulation in February, 1927, and it seems probable that both were issued within a few months before the dismantling of the Newton plant. The new company was organized to take over this property and to remove the movables to Pella. All of the individual appellees were participants in, or actively interested in, the organization of this company, and were certainly familiar with its affairs. The mortgagor was an active party to the contracts which were parts of this general plan, and its governing stockholders were participants in, or interested in, the organization and the success of the new company. Hence all of these appellees would be bound by statements in these prospectuses as to the value of the Newton property. Each of the prospectuses contained such statements, and the purpose of the offer was to get such statements before the jury. We

think they were competent as admissions against interest. We need not determine whether the exclusion as being improper cross-examination was correct, because they were offered directly in connection with appellants' witnesses.

Another matter urged by appellants is that they were improperly limited in cross-examination of the witness Caldwell. This witness was placed on the stand by appellees as an expert on values. He was asked a hypothetical question as to whether the removal of the machinery and fixtures would decrease the fair reasonable value of this building and machinery where the operating company had sold the patents under which it was operating and had become financially unable to continue operation without additional financing. He answered that there would be no decrease of value therefrom. The question excluded on cross-examination was:

"Would it make a difference in your opinion if it appeared that the local community had raised $125,000.00 which would be sufficient to keep the factory in operation?"

The question was excluded on an objection that it was "an assumption of counsel." While the ground of the objection may not have been well taken, yet the hypothetical question was (under our holding above as to the materiality of the sale of the patents and the financial condition of the mortgagor) improper, and, on retrial, would not again occur, and therefore the basis of the question on cross-examination would disappear. It is, however, not out of place to say that, in view of this opinion, we do not now see how evidence as to this community fund is pertinent to any issue which will be presented at the retrial. The well-known inducement and purposes for raising such character of fund are so removed from the question of value of the property that no light is thrown on such value by this kind of evidence.

Another matter of disputed evidence related to the expense of removing the equipment from Newton to Pella. This expense has nothing to do with the issues of this case. The removal was, admittedly, without the consent of this mortgagee, and we hold it was in violation of the mortgage. It is not material to the recovery for this waste that the appellees were put to expense to commit it.

The judgment should be and is reversed, and the cause remanded for a new trial.